# EXHIBIT "D"

[EXECUTION]

## AMENDMENT NO. 8
## TO LOAN AND SECURITY AGREEMENT

AMENDMENT NO. 8 TO LOAN AND SECURITY AGREEMENT, dated as of August 31, 2005, is by and among Wachovia Bank, National Association, a national banking association, successor by merger to Congress Financial Corporation (Florida), in its capacity as administrative and collateral agent and co-lead arranger pursuant to the Loan Agreement (as hereinafter defined) acting for and on behalf of the financial institutions which are parties thereto as lenders (in such capacity, "Agent"), Fleet Retail Group, LLC, successor to Fleet Retail Finance Inc., in its capacity as co-lead arranger pursuant to the Loan Agreement acting for and on behalf of the financial institutions which are parties thereto as lenders (in such capacity, "Co-Agent"), the financial institutions which are parties to the Loan Agreement as lenders (individually, each a "Lender" and collectively, "Lenders"), Suncoast Motion Picture Company, Inc., Suncoast Group, Inc., Suncoast Retail, Inc., TMG Caribbean, Inc., The Musicland Group, Inc., Musicland Purchasing Corp., Musicland Retail, Inc., TMG-Virgin Islands, Inc., MLG Internet, Inc., Media Play, Inc., and Request Media, Inc. (individually each, a "Borrower" and collectively, "Borrowers"), Musicland Holding Corp., MG Financial Services, Inc., Sam Goody Holding Corp., and Suncoast Holding Corp. (individually each, a "Guarantor" and collectively, "Guarantors").

### W I T N E S S E T H :

WHEREAS, Agent, Lenders, Borrowers and Guarantors have entered into financing arrangements pursuant to which Lenders (or Agent on behalf of Lenders) may make loans and advances and provide other financial accommodations to Borrowers as set forth in the Loan and Security Agreement, dated as of August 11, 2003, by and among Agent, Co-Agent, Lenders, Borrowers and Guarantors, as amended by Amendment No. 1 to Loan and Security Agreement dated as of October 24, 2003, Amendment No. 2 to Loan and Security Agreement, dated as of November 17, 2003, Amendment No. 3 to Loan and Security Agreement, dated as of June 10, 2004, Amendment No. 4 to Loan and Security Agreement, dated as of September 21, 2004, Amendment No. 5 to Loan and Security Agreement, dated as of September 22, 2004, Amendment No. 6 to Loan and Security Agreement, dated as of October 15, 2004 and Amendment No. 7 to Loan and Security Agreement, dated as of February 28, 2005 (as the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced, the "Loan Agreement") and other agreements, documents and instruments referred to therein or at any time executed or delivered in connection therewith or related thereto, including, without limitation, this Amendment No. 8 (all of the foregoing, including the Loan Agreement, as the same now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced, being collectively referred to herein as the "Financing Agreements");

WHEREAS, Borrowers and Guarantors have requested that Agent and Lenders consent to the incurrence of secured indebtedness in favor of Term Loan Lender (as hereinafter defined) and make certain amendments to the Loan Agreement and Agent and Lenders are willing to

576828.12

agree to such requests, subject to the terms and conditions contained herein; and

WHEREAS, by this Amendment No. 8, Agent, Lenders, Borrowers and Guarantors intend to evidence such consent and amendments;

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements and covenants contained herein, the parties hereto agree as follows:

1. Definitions.

(a) Additional Definitions. As used herein, the following terms shall have the meanings given to them below and the Loan Agreement and the other Financing Agreements are hereby amended to include, in addition and not in limitation, the following definitions:

(i) "Amendment No. 8" shall mean this Amendment No. 8 to Loan and Security Agreement, as the same now exists and may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(ii) "Revolving Loan Commitment" shall mean, at any time, as to each Revolving Loan Lender, the principal amount set forth on Schedule 1 to Amendment No. 8 designated as its Revolving Loan Commitment or on Schedule 1 to the Assignment and Acceptance Agreement pursuant to which such Revolving Loan Lender became a Revolving Loan Lender thereunder in accordance with the provisions of Section 13.6 hereof, as the same may be adjusted from time to time in accordance with the terms thereof; sometimes being collectively referred to as the "Revolving Loan Commitments".

(iii) "Revolving Loan Lender" shall mean a Lender with a Revolving Loan Commitment; sometimes being collectively referred to as the "Revolving Loan Lenders".

(iv) "Revolving Loan Obligations" shall mean all Obligations other than the Term Loan Obligations.

(v) "Revolving Loans" shall mean the loans now or hereafter made by or on behalf of any Revolving Loan Lender or by Agent for the ratable account of any Revolving Loan Lender on a revolving basis pursuant to the Credit Facility (involving advances, repayments and readvances) as set forth in Section 2.1 hereof, including the Supplemental Loans.

(vi) "Specified Pre-Petition Claims" shall mean, with respect to any Obligations, any interest, fees, costs, expenses and other amounts (including, without limitation, reasonable attorneys' fees and expenses) in respect of such Obligations which (a) would accrue and become due but for the commencement of any case with respect to a Borrower or Guarantor under the United States Bankruptcy Code or any similar statute and (b) are not allowed or allowable in such case.

(vii) "Term Loan" shall mean the term loan made by Term Loan Lender to or for the benefit of Purchasing as set forth in Section 2.3 of the Loan Agreement and which shall be in addition to the Revolving Loans which may be made by Revolving Loan

576828.12

2

Lenders to Borrowers pursuant to Section 2.1 hereof, including the Supplemental Loans. The Term Loan shall not be deemed either a Prime Rate Loan or a Eurodollar Rate Loan.

(viii)   "Term Loan Commitment" shall mean $25,000,000, which commitment shall terminate upon the funding of the Term Loan.

(ix)   "Term Loan Lender" shall mean Harris N.A., together with its successors and assigns.

(x)   "Term Loan Obligations" shall mean all obligations, liabilities and indebtedness arising under or pursuant to the Term Loan.

(xi)   "Term Loan Promissory Note" shall mean the promissory note, dated August 31, 2005, by Purchasing in favor of Term Loan Lender, in the original principal amount of $25,000,000, as the same now exists and may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(b)   Amendments to Definitions.

(i)   Section 1.46 of the Loan Agreement is deleted in its entirety and the following substituted therefor:

"1.46 "Excess Availability" shall mean the amount, as determined by Agent, calculated at any date, equal to: (a) the Borrowing Base (after giving effect to any Reserves other than any Reserves in respect of Letter of Credit Accommodations), minus (b) the sum of: (i) the amount of all then outstanding and unpaid Obligations (other than any outstanding Letter of Credit Accommodations or Obligations in respect of the Term Loan) plus, (ii) the amount of all Reserves then established in respect of Letter of Credit Accommodations."

(ii)   Section 1.63(a) of the Loan Agreement is hereby amended by adding the following Section 1.63(a)(v) at the end thereof:

"(v) as to the Term Loan, a rate equal to the prime rate announced from time to time by Bank of Montreal or Harris N.A., as Term Loan Lender may determine, plus three and one-half (3 1/2%) percent per annum. Upon the request of Agent, Term Loan Lender shall promptly notify Agent in writing of the applicable prime rate then in effect for purposes of determining the Interest Rate with respect to the Term Loan."

(iii)   Section 1.63(b) of the Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

"(b) Notwithstanding anything to the contrary contained herein, the Interest Rate shall mean the applicable per annum rates set forth above with respect to all Loans other than the Term Loan plus (in each case) two (2.00%) percent per annum, at Agent's option and, the Interest Rate shall mean the per annum rate set forth in clause (a)(v) above with respect to the Term Loan plus two (2.00%) percent per annum, at Term Loan Lender's option, in each case, upon prior notice

(which in the case of the Term Loan shall be given promptly after Agent receives a request from Term Loan Lender to give such notice), (i) either (A) for the period on and after the date of termination or non-renewal hereof until such time as all Obligations are indefeasibly paid and satisfied in full in immediately available funds, or (B) for the period from and after the date of the occurrence of any Event of Default, and for so long as such Event of Default is continuing as determined by Agent in good faith and (ii) on the Revolving Loans at any time outstanding in excess of the Borrowing Base or the Maximum Credit (whether or not such excess(es) arise or are made with or without Agent's or any Revolving Lender's knowledge or consent and whether made before or after an Event of Default). Upon the request of a Borrower, Agent will promptly notify such Borrower in writing if any Interest Rate specified in this clause (b) is in effect."

(iv) Section 1.100 of the Loan Agreement is deleted in its entirety and the following substituted therefor:

"1.100 "Required Lenders" shall mean: (a) at any time that three (3) or more persons are Revolving Loan Lenders, those Revolving Loan Lenders whose Pro Rata Shares aggregate sixty-six and two-thirds (66 2/3%) percent or more of the aggregate of the Revolving Loan Commitments of all Revolving Loan Lenders, or if the Revolving Loan Commitments shall have been terminated, Revolving Loan Lenders to whom at least sixty-six and two-thirds (66 2/3%) percent of the then outstanding Obligations (exclusive of Obligations in respect of the Term Loan) are owing, and (b) at all other times, all Revolving Loan Lenders.

(v) All references to the term "Commitments" herein and in the Loan Agreement and the other Financing Agreements shall be deemed and each such reference is hereby amended to mean the Revolving Loan Commitments and the Term Loan Commitment.

(vi) All references to the term "Financing Agreements" herein and in the Loan Agreement and the other Financing Agreements shall be deemed and each such reference is hereby amended to include, in addition and not in limitation, this Amendment No. 8.

(vii) The definition of and all references to the term "Lenders" herein and in the Loan Agreement and the other Financing Agreements shall be deemed and such definition and each such reference is hereby amended to mean, collectively, the Revolving Loan Lenders and the Term Loan Lender (sometimes being referred to individually as a "Lender"), except that for purposes of Sections 1.51, 1.67, 1.91 (other than as applied to Section 12.5), 2.1, 2.2, 2.5, 3.1(b), 3.2, 6.5, 6.8, 6.10, 10.2(g), 11.3(a)(iii), 11.3(a)(iv), 11.3(a)(vii), 12.8, 12.11(b)(v), the sentence immediately following Section 12.11(b)(v), 13.1(c) and 13.1(d) all references to the term "Lender" or "Lenders" in such Sections shall be deemed and each such reference is hereby amended to mean, Revolving Loan Lender or Revolving Loan Lenders, as applicable.

(viii) The definition of and all references to the term "Loans" in the Loan Agreement and the other Financing Agreements shall be deemed and such definition and each such reference is hereby amended to mean the Revolving Loans and the Term Loan (sometimes referred to individually as a "Loan"), except that for purposes of Sections 1.8, 1.29,

4

1.91 (other than as applied to Section 12.5), 2.1, 2.2, 2.5, 3.1(b), 3.2, 6.8, 6.10, 10.2(g) and 12.8, all references to the term "Loan" or "Loans" in such Sections and each such reference is hereby amended to mean a Revolving Loan or Revolving Loans, as applicable.

(ix) All references to the term "Obligations" herein and in the Loan Agreement and the other Financing Agreements shall be deemed and each such reference is hereby amended to include, in addition and not in limitation, the present and future obligations, liabilities and indebtedness of Borrowers in respect of the Term Loan.

(c) Interpretation. All capitalized terms used herein shall have the meanings assigned thereto in the Loan Agreement unless otherwise defined herein.

2. Loans. Section 2.1(c) of the Loan Agreement is deleted in its entirety and the following substituted therefor:

"(c) Except in Agent's discretion, with the consent of all Revolving Loan Lenders, or as otherwise provided herein, (i) the aggregate amount of the outstanding Letter of Credit Accommodations shall not exceed the sublimit for Letter of Credit Accommodations set forth in Section 2.2(e), (ii) the aggregate principal amount of the Revolving Loans and the Letter of Credit Accommodations outstanding at any time shall not exceed the Borrowing Base and (iii) the aggregate principal amount of the Revolving Loans, Term Loan and the Letter of Credit Accommodations outstanding at any time shall not exceed the Maximum Credit. In the event that (i) the aggregate amount of the outstanding Letter of Credit Accommodations exceeds the sublimit for Letter of Credit Accommodations set forth in Section 2.2(e), (ii) the aggregate principal amount of the Revolving Loans and Letter of Credit Accommodations outstanding at any time exceeds the Borrowing Base, or (iii) the aggregate principal amount of the Revolving Loans, Term Loan and the Letter of Credit Accommodations exceeds the Maximum Credit, such event shall not limit, waive or otherwise affect any rights of Agent or Lenders in such circumstances or on any future occasions and Borrowers shall, upon demand by Agent, which may be made at any time or from time to time, immediately repay to Agent the entire amount of any such excess(es) for which payment is demanded."

3. Term Loan. Section 2 of the Loan Agreement is hereby amended by (a) redesignating Section 2.3 (Commitments) as Section 2.5 and (b) adding the following Sections 2.3 and 2.4 to such Section 2:

"2.3. Term Loan.

(a) Term Loan Lender agrees to make the Term Loan on the effective date of Amendment No. 8, in the amount of the Term Loan Commitment.

(b) The Term Loan shall be (i) repaid, together with interest and all other amounts payable in respect thereof, in accordance with the Term Loan Promissory Note (as in effect on the date

hereof) and the other Financing Agreements, and (ii) secured by all of the Collateral. The entire unpaid principal balance of the Term Loan, together with any and all other Obligations in respect thereof, shall be due and payable on the Expiration Date. Any amount repaid or applied on account of the Term Loan may not be reborrowed.

2.4 Optional Prepayments of Term Loan. No Borrower or Guarantor shall, directly or indirectly, make optional prepayments of principal and/or interest in respect of the Term Loan or redeem, retire, defease, purchase or otherwise acquire the Term Loan, or set aside or otherwise deposit or invest any sums for such purpose (each of the foregoing, individually a "Prepayment Action" and collectively, "Prepayment Actions"), except, that, Purchasing may take Prepayment Actions at any time after November 30, 2005; provided, that, (a) each Prepayment Action shall be in a minimum amount of $500,000 or an integral multiple thereof (unless in connection with a prepayment in full), (b) Excess Availability as of the date of and after giving effect to each Prepayment Action shall be not less than $40,000,000 and (c) no Default or Event of Default shall have occurred and be continuing on the date of any Prepayment Action and after giving effect thereto. Notwithstanding anything to the contrary set forth in Section 6.4(a), Agent shall apply any such prepayment first to interest and then to principal, in each case in respect of the Term Loan. For purposes of this Section 2.4, the definition of "Excess Availability" shall include an additional clause (b)(iii) to read as follows: "plus (iii) the amount of accounts payable unpaid more than sixty (60) days past the original due date for them".

4.  Payments.

Section 6.4(a) of the Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

"(a) All Obligations shall be payable to the Agent Payment Account as provided in Section 6.3 or such other place as Agent may designate from time to time. Except with respect to prepayments made pursuant to and in accordance with Section 2.4 hereof, Agent shall apply payments received or collected from any Borrower or Guarantor or for the account of any Borrower or Guarantor (including the monetary proceeds of collections or of realization upon any Collateral) as follows: first, to the payment in full of any fees, indemnities or expense reimbursements then due to Agent and Lenders from any Borrower or Guarantor other than in respect of Term Loan; second, to the payment in full of interest due in respect of the Revolving Loans not consisting of

Supplemental Loans; third, to the payment in full of principal due in respect of the Revolving Loans not consisting of Supplemental Loans; fourth, to the payment in full of interest due in respect of any Revolving Loans consisting of Supplemental Loans; fifth, so long as no Default or Event of Default shall have occurred and be continuing, to the payment in full of interest due in respect of the Term Loan (it being understood that, if a Default or Event of Default shall have occurred and be continuing, the payment of any or all interest due in respect to the Term Loan shall be payable pursuant to clause eighth below); sixth to the payment in full of principal due in respect of Revolving Loans consisting of Supplemental Loans; seventh, to the payment in full of any fees, indemnities or expense reimbursements then due to Agent or Term Loan Lender in respect of the Term Loan; eighth, if a Default or Event of Default shall have occurred and be continuing, to the payment in full of interest due in respect of Term Loan; ninth, to the payment in full of principal due in respect of Term Loan; tenth, to the payment or prepayment in full of any other Obligations whether or not then due, in such order and manner as Agent determines; provided, that, notwithstanding anything to the contrary contained in this Agreement, (i) unless so directed by Administrative Borrower, or unless a Default or an Event of Default shall exist or have occurred and be continuing, Agent shall not apply any payments which it receives to any Eurodollar Rate Loans made to any Borrower, except (A) on the expiration date of the Interest Period applicable to any such Eurodollar Rate Loans or (B) in the event that there are no outstanding Prime Rate Loans made to any Borrower (it being understood that Agent will attempt to honor any written request received from any Borrower to not apply payments to any Eurodollar Rate Loans prior to the expiration of the Interest Period applicable thereto but Agent shall have no liability for its failure to do so), and (ii) to the extent any Borrower uses any proceeds of the Loans or Letter of Credit Accommodations to acquire rights in or the use of any Collateral or to repay any Indebtedness used to acquire rights in or the use of any Collateral, payments in respect of the Obligations shall be deemed applied first to the Obligations arising from Loans and Letter of Credit Accommodations that were not used for such purposes and second to the Obligations arising from Loans and Letter of Credit Accommodations the proceeds of which were used to acquire rights in or the use of any Collateral in the chronological order in which such Borrower acquired such rights in or the use of such Collateral.

For purposes of this Section 6.4(a), "payment in full" or "payment or prepayment in full" as used in each clause of the preceding

paragraph of this Section 6.4(a) as to any category of the Obligations shall mean the payment of all amounts described in such clause, including, but not limited to, any such amounts whether or not arising before, during or after the commencement of any case with respect to any Borrower or Guarantor under the United States Bankruptcy Code or any similar statute, and including the payment of any interest, fees, costs, expenses and other amounts (including, without limitation, reasonable attorneys fees and expenses) as applicable which would accrue and become due but for the commencement of such case, and whether or not any such amounts are allowed or allowable in such case and if after receipt of any payment of any of such amounts, Agent or any Revolving Loan Lender is required to surrender or return such payment or proceeds to any person for any reason, then the Obligations intended to be satisfied by such payment or proceeds shall not be deemed to have been paid in full and shall not be included within the term "payment in full" or the term "payment or prepayment in full" as if such payment had not been received by Agent or such Revolving Loan Lender, as the case may be; provided, that, if the aggregate amount of the Revolving Loan Obligations exceeds the value of the Collateral as determined by a court having jurisdiction over such case, the Revolving Loan Obligations shall not include the Specified Pre-Petition Claims with respect to the Revolving Loan Obligations for purposes of determining if payment in full of the Revolving Loan Obligations shall have occurred under clauses first through sixth above. Notwithstanding anything to the contrary contained in the immediately preceding proviso, in no event shall any Specified Pre-Petition Claims in respect of the Term Loan Obligations be paid unless and until payment in full of all Specified Pre-Petition Claims in respect of the Revolving Loan Obligations has been made. Agent, Borrowers, Guarantors and Lenders acknowledge and agree that any payment pursuant to Section 6.4(a) to or for the benefit of Agent or Revolving Loan Lenders in respect of Specified Pre-Petition Claims to which Term Loan Lender would have been entitled but for the provisions of this Section 6.4 shall, as between Borrowers and Term Loan Lender, be deemed to be a payment by Borrowers in respect of the Term Loan; provided, that, following the date on which the Revolving Loan Lenders have received payment in full of the Revolving Loan Obligations, the Term Loan Lender shall, to the extent permitted by applicable law, be subrogated to the rights of the Revolving Loan Lenders under the Financing Agreements."

5. Indemnification. Section 12.5 of the Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

"12.5  Indemnification.  Lenders agree to indemnify Agent (to the extent not reimbursed by Borrowers hereunder and without limiting any obligations of Borrowers hereunder) ratably, in accordance with their Pro Rata Shares (calculated, at any time prior to the repayment in full of all Obligations in respect of the Term Loan, as if a Commitment of $25,000,000 is attributable to the Term Loan Lender), for any and all claims of any kind and nature whatsoever that may be imposed on, incurred by or asserted against Agent (including by any Lender) arising out of or by reason of any investigation in or in any way relating to or arising out of this Agreement or any other Financing Agreement or any other documents contemplated by or referred to herein or therein or the transactions contemplated hereby or thereby (including the costs and expenses that Agent is obligated to pay hereunder) or the enforcement of any of the terms hereof or thereof or of any such other documents, provided, that, no Lender shall be liable for any of the foregoing to the extent it arises from the gross negligence or willful misconduct of the party to be indemnified as determined by a final non-appealable judgment of a court of competent jurisdiction.  The foregoing indemnity shall survive the payment of the Obligations and the termination or non-renewal of this Agreement."

6.  The Agent.  Section 12 of the Loan Agreement is hereby amended by adding the following Section 12.15 to such Section 12:

"12.15  Term Loan Lender as Successor Agent.  In the event that all Obligations other than in respect of the Term Loan are fully and finally paid and satisfied and the Revolving Loan Commitments have been terminated, Agent may, and agrees that it shall, promptly appoint Term Loan Lender as successor agent hereunder; provided, that, Term Loan Lender shall have provided to Agent an indemnity with respect to claims and liabilities arising after Term Loan Lender becomes the Agent, in form and substance satisfactory to Agent and its counsel."

7.  Notices.

(a)  Section 13.3 of the Loan Agreement is hereby amended so that the address of Agent set forth therein is deleted in its entirety and the following substituted therefor:

"If to Agent:      Wachovia Bank, National Association, as Agent
                   110 East Broward Boulevard
                   Fort Lauderdale, Florida 33301
                   Attention: Portfolio Manager
                   Telephone No.: (954) 467-2262
                   Telecopy No.: (954) 467-5520"

(b)  Section 13.3 of the Loan Agreement is hereby amended by adding the following addresses for notices at the end of such Section:

"If to Term Loan Lender:    Harris N.A.
                           111 West Monroe Street

576828.12

Chicago, Illinois 60603
Attention: Brett M. Sanchez
Telephone No.: (312) 461-7414
Telecopy No.: (312) 282-1679"

8. **Notice of Proceeding.** Without limitation upon all obligations and covenants of Borrowers and Guarantors under the Loan Agreement and the other Financing Agreements, Borrowers and Guarantors hereby agree that no Borrower or Guarantor shall commence any voluntary case or proceeding under the bankruptcy laws of the United States of America now or hereafter in effect or under any insolvency, reorganization, receivership, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction now or hereafter in effect (whether at law or equity) or file any answer admitting or not contesting any petition or application of any Person in respect of any of the foregoing or otherwise consent to, acquiesce in or otherwise approve of any such petition or application, in each case unless Agent and Term Loan Lender shall have received from Administrative Borrower not less than twenty (20) days' prior written notice thereof.

9. **Additional Representations; Warranties and Covenants.** Each Borrower and Guarantor, jointly and severally, represents, warrants and covenants with and to Agent and Lenders as follows, which representations, warranties and covenants are continuing and shall survive the execution and delivery hereof, and the truth and accuracy of, or compliance with each, together with the representations, warranties and covenants in the other Financing Agreements, being a continuing condition of the making or providing of any Loans or Letter of Credit Accommodations by Agent and Lenders to Borrowers:

(a) neither the execution, delivery and performance of this Amendment No. 8, or any other Financing Agreements in connection herewith, nor the consummation of the transactions herein or therein contemplated, are in contravention of law or any indenture, agreement or undertaking to which any Borrower or Guarantor is a party or by which any Borrower or Guarantor or its property are bound, or violates any provision of the Certificate of Incorporation or By-Laws (or similar governing documents) of any Borrower or Guarantor;

(b) this Amendment No. 8 has been duly authorized, executed and delivered by all necessary action of each Borrower and Guarantor, and is in full force and effect, and the agreements and obligations of each Borrower and Guarantor contained herein constitute legal, valid and binding obligations of Borrowers and Guarantors enforceable against Borrowers and Guarantors in accordance with their respective terms;

(c) no action of, or filing with, or consent of any Governmental Authority, and no approval or consent of any other party, is or will be required to authorize, or is or will be otherwise required in connection with, the execution, delivery and performance of this Amendment No. 8;

(d) none of the transactions contemplated by this Amendment No. 8 violate or will violate any applicable law or regulation, or do or will give rise to a default or breach under any agreement to which any Borrower or guarantor is a party or by which any property of any Borrower or Guarantor is bound.

(e) on the date hereof, no Default or Event of Default has occurred and is continuing; and

(f) the security interests in and liens of Agent and Lenders upon all assets and properties of Borrowers and Guarantors are and shall continue to be in full force and effect.

10. Conditions Precedent. The amendments contained herein shall only be effective upon the satisfaction of each of the following conditions precedent in a manner satisfactory to Agent:

(a) Agent shall have received an executed original or executed original counterparts of this Amendment No. 8, duly authorized, executed and delivered by the respective parties hereto;

(b) Agent shall have received a true and correct copy of any consent, waiver or approval to or of this Amendment No. 8, which any Borrower or Guarantor is required to obtain from any other Person, and such consent, approval or waiver shall be in form and substance reasonably satisfactory to Agent; and

(c) no Default or Event of Default shall have occurred and be continuing.

11. Revolving Loan Commitments. Notwithstanding anything in the Loan Agreement or any of the other Financing Agreements to the contrary, the Revolving Loan Commitment of each Revolving Loan Lender shall be, at any time, as to such Revolving Loan Lender, the principal amount set forth on Schedule 2 hereto or on Schedule 1 to the Assignment and Acceptance Agreement pursuant to which such Revolving Loan Lender becomes a Lender under the Loan Agreement in accordance with the provisions of Section 13.6 of the Loan Agreement, as the same may be adjusted from time to time in accordance with the terms of the Loan Agreement.

12. Bankruptcy Financing. If any Borrower or Guarantor shall become subject to a proceeding under the United States Bankruptcy Code and if Agent and/or Revolving Loan Lenders desire to permit the use of cash collateral or to provide financing to any Borrowers under either Section 363 or Section 364 of the United States Bankruptcy Code, Term Loan Lender agrees as follows: (a) adequate notice to Term Loan Lender shall have been provided for such financing or use of cash collateral if Term Loan Lender receives notice two (2) Business Days prior to the entry of the order approving such financing or use of cash collateral, (b) no objection will be raised by Term Loan Lender to any such financing or use of cash collateral on the grounds of a failure to provide "adequate protection" for Agent's interest in the Collateral for the benefit of Term Loan Lender or any other grounds; provided, that, with respect to any such financing or use of cash collateral, the security interest of Agent in the Collateral to secure the Term Loan continues with the same priority as existed prior to the commencement of the proceeding under the United States Bankruptcy Code (subject to the priorities set forth in Section 6.4 of the Loan Agreement), to the extent of the secured claim of Term Loan Lender in any such proceeding. Term Loan Lender agrees, for so long as the Term Loan Obligations are outstanding, that it shall not provide to any Borrower or Guarantor as debtor-in-possession any financing under Section 364(d) of the U.S. Bankruptcy Code to the extent the Term Loan Lender would, in connection with such financing, be granted a lien, security interest or other interest in the Collateral that is senior to or pari passu with the interest therein of Agent for the benefit of

Revolving Loan Lenders. For purposes of this paragraph, notice of a proposed financing or use of cash collateral shall be deemed given when given, in the manner prescribed by Section 13.3 of the Loan Agreement, to Term Loan Lender.

### 13. Term Loan Lender Purchase Option.

(a) In the event that Agent and Revolving Loan Lenders propose to authorize or effect a release of the security interest of Agent in Collateral pursuant to Section 11.3(a)(iii) or Section 12.11(b)(v) of the Loan Agreement (each a "Release"), Agent shall give Term Loan Lender five (5) Business Days' prior notice of the intent of Agent and Revolving Loan Lenders to authorize and/or effect such release (the "Release Notice") unless, in the good faith judgment of Agent, the giving of such Release Notice will have an adverse effect upon the Collateral or the collection of the Obligations. Term Loan Lender shall have the option not more than three (3) Business Days after the delivery of the Release Notice, upon two (2) Business Days' prior written notice to Agent, to purchase from Agent and Revolving Loan Lenders, not later than the date which is five (5) Business Days after the delivery of the Release Notice, all of the Obligations owing by Borrowers and Guarantors to Agent and Revolving Loan Lenders (the "Working Capital Debt"). Such notice from Term Loan Lender to Agent with respect to the purchase of the Working Capital Debt shall be irrevocable.

(b) On the date specified by Term Loan Lender in such notice (which date shall be not more than five (5) Business Days following the delivery by Agent of the Release Notice), Agent and Revolving Loan Lenders shall sell to Term Loan Lender, and Term Loan Lender shall purchase from Agent and Revolving Loan Lenders, the Working Capital Debt; provided, that, Agent and Revolving Loan Lenders shall retain all rights to be indemnified or held harmless by Borrowers and Obligors in accordance with the terms of the Loan Agreement and the other Financing Agreements but shall not retain any rights to the security therefor.

(c) Upon the date of such purchase and sale, Term Loan Lender shall (i) pay to Agent, for itself and the ratable benefit of Revolving Loan Lenders, as the purchase price therefor, the full amount of all the Working Capital Debt then outstanding and unpaid (including principal, interest, fees and expenses, including the early termination fee set forth in Section 13.1(c) of the Loan Agreement, irrespective of whether such fee is in fact then due and owing, and reasonable attorneys' fees and legal expenses), (ii) furnish cash collateral to Agent in such amounts as Agent determines is reasonably necessary to secure Agent and Revolving Loan Lenders in connection with any issued and outstanding letters of credit provided by Agent and Revolving Loan Lenders (or letters of credit that Agent has arranged to be provided by third parties pursuant to the financing arrangements of Agent and Revolving Loan Lenders with any Borrower or Obligor) to any Borrower or Obligor (but not in any event in an amount greater than 105% of the aggregate undrawn face amount of such letters of credit), (iii) agree to reimburse Agent and Revolving Loan Lenders for any loss, cost, damage or expense (including reasonable attorneys' fees and legal expenses) in connection with any commissions, fees, costs or expenses related to any issued and outstanding letters of credit as described above and any checks or other payments provisionally credited to the Working Capital Debt, and/or as to which Agent and Revolving Loan Lenders have not yet received final payment and (iv) agree to reimburse Agent and Revolving Loan Lenders in respect of indemnification obligations of Borrowers under the Loan Agreement and the other Financing Agreements as to matters or circumstances existing at

the time of the purchase and sale which could reasonably be expected to result in any loss, cost, damage or expense (including reasonable attorneys' fees and legal expenses) to Agent and Revolving Loan Lenders. Such purchase price and cash collateral shall be remitted by wire transfer in federal funds to such bank account of Agent in New York, New York, as Agent may designate in writing to Term Loan Lender for such purpose. Interest shall be calculated to but excluding the Business Day on which such purchase and sale shall occur if the amounts so paid by Term Loan Lender to the bank account designated by Agent are received in such bank account prior to 12:00 noon, Miami, Florida time and interest shall be calculated to and including such Business Day if the amounts so paid by Term Loan Lender to the bank account designated by Agent are received in such bank account later than 12:00 noon, Miami, Florida time.

(d) Such purchase shall be expressly made without representation or warranty of any kind by Agent and Revolving Loan Lenders as to the Working Capital Debt or otherwise and without recourse to Agent and Revolving Loan Lenders.

14. Acknowledgment of Obligations. Each Borrower and Guarantor hereby acknowledges, confirms and agrees that:

(a) all Obligations of such Borrower or Guarantor under the Financing Agreements to which it is a party are unconditionally owing by such Borrower or Guarantor to Agent and Lenders, without offset, defense or counterclaim of any kind, nature and description whatsoever; and

(b) the guarantee of the payment and performance of the Obligations of Borrowers by each Guarantor extends to and applies in all respects to the Obligations as existing as of the date hereof and all Obligations hereafter arising.

15. Binding Effect of Documents. Each Borrower and Guarantor hereby acknowledges, confirms and agrees that: (a) each of the Financing Agreements to which it is a party has been duly executed and delivered to Agent by such Borrower or Guarantor and is in full force and effect as of the date hereof, (b) the agreements and obligations of such Borrower or Guarantor contained in the Financing Agreements constitute the legal, valid and binding obligations of such Borrower or Guarantor enforceable against such Borrower or Guarantor in accordance with their respective terms, (c) Agent and Lenders are and shall be entitled to all of the rights, remedies and benefits provided for in the Financing Agreements, and (e) each of the Financing Agreements shall be and is hereby reaffirmed, ratified, confirmed and extended (as amended hereby) in respect of Borrowers and such Guarantor, as applicable, to the Obligations.

16. General.

(a) Effect of this Amendment. Except as expressly provided herein, no other changes or modifications to the Financing Agreements are intended or implied, and in all other respects the Financing Agreements are hereby specifically ratified, restated and confirmed by all parties hereto as of the date hereof. To the extent any conflict exists between the terms of this Amendment No. 8 and the other Financing Agreements, the terms of this Amendment No. 8 shall control.

576828.12

(b) <u>Governing Law</u>. The validity, interpretation and enforcement of this Amendment No. 8 and any dispute arising out of the relationship between the parties hereto, whether in contract, tort, equity or otherwise, shall be governed by the internal laws of the State of Florida but excluding any principles of conflicts of law or other rule of law that would cause the application of the law of any jurisdiction other than the laws of the State of Florida.

(c) <u>Jury Trial Waiver</u>. BORROWERS, GUARANTORS, AGENT AND LENDERS EACH HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING UNDER THIS AMENDMENT NO. 8 OR ANY OF THE OTHER FINANCING AGREEMENTS OR IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO IN RESPECT OF THIS AMENDMENT NO. 8 OR ANY OF THE OTHER FINANCING AGREEMENTS OR THE TRANSACTIONS RELATED HERETO OR THERETO IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER IN CONTRACT, TORT, EQUITY OR OTHERWISE. BORROWERS, GUARANTORS, AGENT AND LENDERS EACH HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY AND THAT ANY BORROWER, GUARANTOR, AGENT OR ANY LENDER MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS AMENDMENT NO. 8 WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

(d) <u>Binding Effect</u>. This Amendment No. 8 shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and assigns.

(e) <u>Waiver, Modification, Etc</u>. No provision or term hereof may be modified, altered, waived, discharged or terminated orally, but only by an instrument in writing executed by the party against whom such modification, alteration, waiver, discharge or termination is sought to be enforced.

(f) <u>Further Assurances</u>. Borrowers and Guarantors shall execute and deliver such additional documents and take such additional action as may be reasonably requested by Agent to effectuate the provisions and purposes of this Amendment No. 8.

(g) <u>Entire Agreement</u>. This Amendment No. 8, together with the Loan Agreement and the other Financing Agreements, contain the entire agreement of the parties hereto concerning the subject matter hereof and supersedes all prior oral or written discussions, proposals, negotiations or communications concerning the subject matter hereof.

(h) <u>Counterparts, etc</u>. This Amendment No. 8 may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute but one and the same agreement. In making proof of this Amendment No. 8, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties hereto. Delivery of an executed counterpart of this Amendment No. 8 by telefacsimile or other electronic method of transmission shall have the same force and effect as delivery of an original executed counterpart of this Amendment No. 8. Any party delivering an executed counterpart of this Amendment No. 8 by telefacsimile or other electronic method of transmission shall also

deliver an original executed counterpart of this Amendment No. 8 but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Amendment No. 8 as to such party or any other party.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

576828:12

IN WITNESS WHEREOF, the parties hereto have caused this Amendment No. 8 to be duly executed and delivered by their authorized officers as of the day and year first above written.

BORROWERS:

SUNCOAST MOTION PICTURE
COMPANY, INC.
SUNCOAST GROUP, INC.
SUNCOAST RETAIL, INC.
TMG CARIBBEAN, INC.
THE MUSICLAND GROUP, INC.
MUSICLAND PURCHASING CORP.
MUSICLAND RETAIL, INC.
TMG-VIRGIN ISLANDS, INC.
MLG INTERNET, INC.
MEDIA PLAY, INC.
REQUEST MEDIA, INC.

By: _____
     Craig C. Wassenaar
Title: _Chief Financial Officer_

GUARANTORS:

MUSICLAND HOLDING CORP.
MG FINANCIAL SERVICES, INC.
SAM GOODY HOLDING CORP.
SUNCOAST HOLDING CORP.

By: _____
     Craig C. Wassenaar
Title: _Chief Financial Officer_

[SIGNATURE CONTINUE ON FOLLOWING PAGE]

08/16/2005  11:49    9543700527              DIXON                    PAGE  02

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

AGENT

WACHOVIA BANK, NATIONAL ASSOCIATION,
as successor by merger to Congress Financial Corporation (Florida),
as Agent

By: _____

Title: _____

REVOLVING LOAN LENDERS

WACHOVIA BANK, NATIONAL ASSOCIATION,
as successor by merger to Congress Financial Corporation (Florida)

By: _____

Title: _____

FLEET RETAIL FINANCE INC.

By: _____

Title: _____

NATIONAL CITY BUSINESS CREDIT, INC.

By: _____

Title: _____

WESTERNBANK BUSINESS CREDIT,
a division of Westernbank Puerto Rico

By: _____

Title: _____

[SIGNATURE CONTINUE ON FOLLOWING PAGE]

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

AGENT

WACHOVIA BANK, NATIONAL ASSOCIATION,
as successor by merger to Congress Financial Corporation (Florida),
as Agent

By:_____

Title:_____

REVOLVING LOAN LENDERS

WACHOVIA BANK, NATIONAL ASSOCIATION,
as successor by merger to Congress Financial Corporation (Florida)

By:_____

Title:_____

FLEET RETAIL FINANCE INC.  *Group, LLC*

By: _____

Title: *Director*_____

NATIONAL CITY BUSINESS CREDIT, INC.

By:_____

Title:_____

WESTERNBANK BUSINESS CREDIT,
a division of Westernbank Puerto Rico

By:_____

Title:_____

[SIGNATURE CONTINUE ON FOLLOWING PAGE]

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

AGENT

WACHOVIA BANK, NATIONAL ASSOCIATION,
as successor by merger to Congress Financial Corporation (Florida),
as Agent

By:_____

Title:_____

REVOLVING LOAN LENDERS

WACHOVIA BANK, NATIONAL ASSOCIATION,
as successor by merger to Congress Financial Corporation (Florida)

By:_____

Title:_____

FLEET RETAIL FINANCE INC.

By:_____

Title:_____

NATIONAL CITY BUSINESS CREDIT, INC.

By: _____

Title: _Vice President_____

WESTERNBANK BUSINESS CREDIT,
a division of Westernbank Puerto Rico

By:_____

Title:_____

[SIGNATURE CONTINUE ON FOLLOWING PAGE]

8-29-05; 4:16PM;        ;7677517501      # 2/ 3

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

AGENT

WACHOVIA BANK, NATIONAL ASSOCIATION,
as successor by merger to Congress Financial Corporation (Florida),
as Agent

By: _____

Title: _____

REVOLVING LOAN LENDERS

WACHOVIA BANK, NATIONAL ASSOCIATION,
as successor by merger to Congress Financial Corporation (Florida)

By: _____

Title: _____

FLEET RETAIL FINANCE INC.

By: _____

Title: _____

NATIONAL CITY BUSINESS CREDIT, INC.

By: _____

Title: _____

WESTERNBANK BUSINESS CREDIT,
a division of Westernbank Puerto Rico

By: _____

Title: Senior Vice President

[SIGNATURE CONTINUE ON FOLLOWING PAGE]

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

GMAC COMMERCIAL FINANCE LLC

By: _____

Title: First Vice President

LASALLE RETAIL FINANCE,
    a division of LaSalle Business Credit, Inc.

By: _____

Title: _____

WELLS FARGO RETAIL FINANCE, LLC

By: _____

Title: _____

TEXTRON FINANCIAL CORPORATION

By: _____

Title: _____

BURDALE FINANCIAL LIMITED

By: _____

Title: _____

By: _____

Title: _____

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

GMAC COMMERCIAL FINANCE LLC

By: _____

Title: _____

LASALLE RETAIL FINANCE,
a division of LaSalle Business Credit, Inc.

By: _CCZ_____

Title: _Vice president_____

WELLS FARGO RETAIL FINANCE, LLC

By: _____

Title: _____

TEXTRON FINANCIAL CORPORATION

By: _____

Title: _____

BURDALE FINANCIAL LIMITED

By: _____

Title: _____

By: _____

Title: _____

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

GMAC COMMERCIAL FINANCE LLC

By: _____

Title: _____

LASALLE RETAIL FINANCE,
  a division of LaSalle Business Credit, Inc.

By: _____

Title: _____

WELLS FARGO RETAIL FINANCE, LLC

By: _____

Title: _SVP Account Executive_____

TEXTRON FINANCIAL CORPORATION

By: _____

Title: _____

BURDALE FINANCIAL LIMITED

By: _____

Title: _____

By: _____

Title: _____

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

GMAC COMMERCIAL FINANCE LLC

By:_____

Title:_____

LASALLE RETAIL FINANCE,
    a division of LaSalle Business Credit, Inc.

By:_____

Title:_____

WELLS FARGO RETAIL FINANCE, LLC

By:_____

Title:_____

TEXTRON FINANCIAL CORPORATION

By: *Angela Leake*

Title: *Senior Account Executive*

BURDALE FINANCIAL LIMITED

By:_____

Title:_____

By:_____

Title:_____

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

30/08 2005 18:13 FAX 02074863513     BURDALE FINANCIAL LTD     ☑002

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

GMAC COMMERCIAL FINANCE LLC

By: _____

Title: _____


LASALLE RETAIL FINANCE,
  a division of LaSalle Business Credit, Inc.

By: _____

Title: _____


WELLS FARGO RETAIL FINANCE, LLC

By: _____

Title: _____


TEXTRON FINANCIAL CORPORATION

By: _____

Title: _____


BURDALE FINANCIAL LIMITED

By: _____

Title: _VICE  PRESIDENT_____

By: _____

Title: _____


[SIGNATURES CONTINUE ON FOLLOWING PAGE]

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

GRAYSON & CO.

By: Boston Management and Research, as Investment Advisor

By: _____

Title: _____
Michael B. Botthof
Vice President

SENIOR DEBT PORTFOLIO

By: Boston Management and Research, as Investment Advisor

By: _____

Title: _____
Michael B. Botthof
Vice President

EATON VANCE SENIOR INCOME TRUST

By: Eaton Vance Management, as Investment Advisor

By: _____

Title: _____
Michael B. Botthof
Vice President

THE CIT GROUP/BUSINESS CREDIT, INC.

By: _____

Title: _____

TERM LOAN LENDER

HARRIS N.A.

By: _____

Title: _____

TOTAL P.003

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

GRAYSON & CO.

By: Boston Management and Research, as Investment Advisor

By: _____

Title: _____

SENIOR DEBT PORTFOLIO

By: Boston Management and Research, as Investment Advisor

By: _____

Title: _____

EATON VANCE SENIOR INCOME TRUST

By: Eaton Vance Management, as Investment Advisor

By: _____

Title: _____

THE CIT GROUP/BUSINESS CREDIT, INC.

By: _____

Title: VP

TERM LOAN LENDER

HARRIS N.A.

By: _____

Title: _____

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

GRAYSON & CO.

By: Boston Management and Research, as Investment Advisor

By:_____

Title:_____

SENIOR DEBT PORTFOLIO

By: Boston Management and Research, as Investment Advisor

By:_____

Title:_____

EATON VANCE SENIOR INCOME TRUST

By: Eaton Vance Management, as Investment Advisor

By:_____

Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.

By:_____

Title:_____

TERM LOAN LENDER

HARRIS N.A.

By:_____

Title:_Managing    Director_

| Lender | Revolving Loan Commitment (9/15 through and including 12/15 of each year)* | Revolving Loan Commitment (12/16 through and including 9/14 of each year)* | Revolving Loan Commitment Percentage | Term Loan Commitment | Term Loan Commitment Percentage |
|---|---|---|---|---|---|
| Credit, Inc. | | | | | |
| Wells Fargo Retail Finance, LLC | $17,500,000 | $14,582,500 | 5.833% | $0 | 0% |
| Textron Financial Corporation | $17,500,000 | $14,582,500 | 5.833% | $0 | 0% |
| Burdale Financial Limited | $15,000,000 | $12,500,000 | 5.000% | $0 | 0% |
| Grayson & Co. | $12,000,000 | $10,000,000 | 4.000% | $0 | 0% |
| Senior Debt Portfolio | $7,000,000 | $5,835,000 | 2.334% | $0 | 0% |
| Eaton Vance Senior Income Trust | $1,000,000 | $832,500 | 0.333% | $0 | 0% |
| Harris N.A. | $0 | $0 | 0% | $25,000,000 | 100% |
| **TOTAL** | $300,000,000 | $250,000,000 | 100% | $25,000,000 | 100% |
| Maximum Total Commitments (9/15 through and including 12/15 of each year): $300,000,000 | | | | | |
| Maximum Total Commitments (12/16 through and including 9/14 of each year): $250,000,000 | | | | | |

*The Revolving Loan Commitment amounts indicated in the chart above are, as to each Revolving Loan Lender, the lesser of such amount and such amount as reduced pro rata by the principal amount of the Term Loan at any time outstanding.

SCHEDULE 1
TO
AMENDMENT NO. 8 TO LOAN AND SECURITY AGREEMENT

Commitments

| Lender | Revolving Loan Commitment (9/15 through and including 12/15 of each year)* | Revolving Loan Commitment (12/16 through and including 9/14 of each year)† | Revolving Loan Commitment Percentage | Term Loan Commitment | Term Loan Commitment Percentage |
|---|---|---|---|---|---|
| Wachovia Bank, National Association | $45,000,000 | $37,500,000 | 15.000% | $0 | 0% |
| Fleet Retail Group, LLC. | $45,000,000 | $37,500,000 | 15.000% | $0 | 0% |
| The CIT Group/Business Credit, Inc. | $35,000,000 | $29,167,500 | 11.667% | $0 | 0% |
| National City Business Credit, Inc. | $35,000,000 | $29,167,500 | 11.667% | $0 | 0% |
| Westernbank Business Credit, a division of Westernbank Puerto Rico | $25,000,000 | $20,832,500 | 8.333% | $0 | 0% |
| GMAC Commercial Finance LLC | $25,000,000 | $20,832,500 | 8.333% | $0 | 0% |
| LaSalle Retail Finance, a division of LaSalle Business | $20,000,000 | $16,667,500 | 6.667% | $0 | 0% |